IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **DOUGLAS PAUL MORSE** § | |
| § | |
| V. § | A-13-CA-330-SS |
| § | |
| **WILLIAM STEPHENS,** Director, § | |
| **Texas Dept. of** § | |
| **Criminal Justice-Correctional** § | |
| **Institutions Division** § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE SAM SPARKS
      UNITED STATES DISTRICT JUDGE

The Magistrate Judge submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. §636(b) and Rule 1(e) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrates, as amended, effective December 1, 2002.

Before the Court are Petitioner's Application for Habeas Corpus Relief under 28 U.S.C. § 2254 (Document 1); Petitioner's Supplemental Memorandum (Document 8); Respondent's Answer (Document 12); and Petitioner's response thereto (Document 13). Petitioner, proceeding pro se, has paid the filing fee for his application. For the reasons set forth below, the undersigned finds that Petitioner's application for writ of habeas corpus should be denied.

**STATEMENT OF THE CASE**

A.   **Petitioner's Criminal History**

According to Respondent, the Director has lawful and valid custody of Petitioner pursuant to four judgments and sentences of the 26th Judicial District Court of Williamson County, Texas,

in cause number 09-264-K26, styled The State of Texas v. Douglas Morse.  A jury convicted Petitioner of two counts of aggravated assault of a public servant, one count of unauthorized use of a motor vehicle, and one count of evading arrest or detention in a motor vehicle.  After finding Petitioner had prior felonies and used a deadly weapon when committing the new felonies, the jury assessed punishment at 58 years in prison.

Petitioner's convictions were affirmed on July 8, 2011.  Morse v. State, No. 03-10-00168-CR, 2011 WL 2651915 (Tex. App. – Austin 2011, pet ref'd).  The Texas Court of Criminal Appeals refused Petitioner's petition for discretionary review on November 9, 2011.  Morse v. State, PD No. 1028-11.

Petitioner also challenged his conviction in two state applications for habeas corpus relief.  The trial court recommended to the Court of Criminal Appeals that the first application should be dismissed as non-compliant.  Despite the recommendation, the Court of Criminal Appeals denied the application without written order on February 13, 2013.  Ex parte Morse, No. 76,420-02 at cover.  Petitioner's second application was dismissed as successive on May 22, 2013.  Ex parte Morse, No. 76-420-03 at cover.

**B.    Factual Background**

The factual background of this case is found in the Court of Appeals opinion and is repeated below.

> Morse filed a motion in limine seeking to limit the State's use of evidence about an altercation with law enforcement on the day before the charged offenses occurred.  Morse asserted that the evidence was improper extraneous offense evidence and that its probative value was substantially outweighed by the risk of unfair prejudice.  See Tex. R. Evid. 403, 404(b).  The trial court denied the motion in limine, but granted Morse a running objection to the evidence. The court stated that the events of February 11, 2009, in Live Oak County were intertwined with and

provided context for the events of February 12, 2009, in Williamson County for which Morse was being tried. The court also stated that the evidence was admissible to show motive, intent, and lack of mistake.

On February 11, 2009, McMullen County Sheriff's Deputy Investigator Jasper McDonald was driving to work in his pickup through Live Oak County when he stopped a truck driven by Morse for having cancelled license plates. McDonald testified that, upon learning that there was a warrant for Morse's arrest, McDonald arrested him, handcuffed him, and began to inventory his truck. Two highway patrol troopers arrived to assist. Meanwhile, Morse maneuvered his cuffed hands to the front of his body, jumped into McDonald's pickup, and drove away. The troopers attempted to stop Morse, but fell away from the pickup as it gained speed. As Morse drove toward him, McDonald ran backwards and fired at the pickup. The officers then got in the troopers' vehicle and pursued Morse to no avail. Morse left the road, went through a fence, and drove cross country. Peace officers later discovered the pickup abandoned early the next morning. An inventory of the pickup appeared to show that Morse had taken one of McDonald's weapons, a .357 revolver.FN1 The troopers who stopped to assist confirmed these events through testimony from their perspectives.

> FN1. McDonald later discovered that he had left the weapon at his home.

United States Probation Officer Jerry Adams testified that Morse had a probation meeting scheduled on the morning of February 12, 2009. Adams testified that Morse called to tell him about the Live Oak County incident and to say he would not be attending the meeting. Adams testified that Morse told him he would not go back to jail "no matter what," that he would not hurt anyone, and that he would not be speaking with Adams again. Adams testified that Morse clearly knew that he had committed new offenses in Live Oak County that could lead to his incarceration.

United States Deputy Marshal Darren Sartin testified that he began looking for Morse after hearing about the Live Oak County incident and learning that Morse might be in Austin. He testified that this information affected the way law enforcement would approach Morse. They were seeking Morse on both the preexisting warrant and charges arising from the Live Oak County events. Sartin learned that Morse was going to an apartment complex in northwest Austin just inside Williamson County, and he directed a team of officers to converge on that site. Morse was returning from the apartment to his car, a Dodge Charger, when Sartin arrived.

Deputy United States Marshal Brian Sheely pulled his vehicle up behind Morse's car and activated his flashing emergency lights. Sheely testified that he got out of his vehicle wearing his badge and a bullet-proof vest emblazoned with the

3

words "US Marshal" and a patch badge.  Sheely testified that he identified himself as "police" and gave "verbal police commands."  Before he could tell Morse to hold his hands up, however, Morse started his car and drove forward over the curb and onto the lawn, maneuvering to return to the parking lot.

Travis County Sheriff's Deputy Ben Wright was forced to jump out of the way to avoid being hit by Morse's car.  Sartin testified that, had Wright not moved, Morse would have killed him.  Deputy United States Marshal Eric McGill moved his vehicle to block Morse's path and Morse accelerated and rammed his car into McGill's vehicle toward the rear of the side in which the passenger, Austin Police Officer Gil Cardenas, was riding.  Morse's car jumped another curb, then crashed into a tree and stopped.  Sartin testified that he approached Morse's car, announced that he was a police officer, and told Morse to show his hands.  Morse got out of his car and ran despite several officers' repeated commands to stop.  Sartin testified that Morse looked right at him and reached toward a front pocket or waistband.  Sartin said that he knew that Morse had the previous day fought with police officers, stolen a police car, reportedly taken a .357, and told his parole officer "I'm not going back to jail."  In explaining his reasons for shooting Morse, Sartin testified that this recent history, coupled with Morse's ongoing attempts to evade capture, caused Sartin to fear that Morse was going to pull a weapon and harm somebody, including Sartin himself.

Deputy Wright's testimony confirmed that McGill had his lights and sirens on when he pulled behind Morse's car.  Wright approached the car commanding Morse to turn the car off and get out.  When Morse instead drove his car onto the lawn, Wright ran toward his own vehicle.  He then heard Morse accelerating and ran between parked cars to avoid being hit.  Wright testified that he was directly in Morse's path and felt he did not have time to pull his gun.  Wright saw Morse's vehicle run into McGill's vehicle.  He testified that McGill joined the foot pursuit of Morse, but that Cardenas was unable to do so because the crash damage prevented him from opening his door.

Several other witnesses testified, adding their perspectives and details about the event.  Other peace officers and residents of the apartment complex testified about the events at the complex.  McGill and Cardenas testified that Morse's running his car into their vehicle caused them back and neck pain for which they received treatment and medication for a few days.  The general manager of a car dealership in Columbus, Texas testified that a Dodge Charger was stolen from his dealership in October 2008.  The vehicle identification number on the stolen car matched the VIN on the Dodge Charger that Morse was driving when apprehended in Williamson County.

Morse v. State, No. 03-10-00168-CR, 2011 WL 2651915, at *1-3 (Tex. App. – Austin 2011, pet. ref'd).

**C.      Petitioner's Grounds for Relief**

Petitioner raises the following grounds for relief:

1.   His trial counsel was ineffective because he failed to:

   a.   investigate data from the manufacturer of the 2009 Dodge Charger;

   b.   advance a scientific defense based on data available; and

   c.   call Chris Holt and Justin Drake as witnesses to discredit Ranger Coleman's testimony;

2.   The prosecution erred by failing to disclose Brady material in the form of vehicle speed data; and

3.   His appellate counsel was ineffective because he failed to show prejudice in his claim of trial court error.

**D.      Exhaustion of State Court Remedies**

Respondent does not contest that Petitioner has exhausted his state court remedies regarding the claims brought in this application. A review of the state court records submitted by Respondent shows that Petitioner has properly raised these claims in previous state court proceedings.

**DISCUSSION AND ANALYSIS**

**A.      The Antiterrorism and Effective Death Penalty Act of 1996**

The Supreme Court has summarized the basic principles that have grown out of the Court's many cases interpreting the 1996 Antiterrorism and Effective Death Penalty Act. See Harrington v. Richter, – U.S. –, 131 S. Ct. 770, 783-85 (2011). The Court noted that the starting point for any federal court in reviewing a state conviction is 28 U.S.C. § 2254, which states in part:

5

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Court noted that "[b]y its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." Harrington, 131 S. Ct. at 784.

One of the issues Harrington resolved was "whether § 2254(d) applies when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." Id. Following all of the Courts of Appeals' decisions on this question, Harrington concluded that the deference due a state court decision under § 2554(d) "does not require that there be an opinion from the state court explaining the state court's reasoning." Id. (citations omitted). The Court noted that it had previously concluded that "a state court need not cite nor even be aware of our cases under § 2254(d)." Id. (citing Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam)). When there is no explanation with a state court decision, the habeas petitioner's burden is to show there was "no reasonable basis for the state court to deny relief." Id. And even when a state court fails to state which of the elements in a multi-part claim it found insufficient, deference is still due to that decision, because "§ 2254(d) applies when a 'claim,' not a component of one, has been adjudicated." Id.

As Harrington noted, § 2254(d) permits the granting of federal habeas relief in only three circumstances: (1) when the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of the Supreme Court; (2) when the earlier decision "involved an unreasonable application of" such law; or (3) when the decision "was based on an unreasonable determination of the facts" in light of the record before the state court. Id. at 785 (citing 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412 (2000)). The "contrary to" requirement "refers to the holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision." Dowthitt v. Johnson, 230 F.3d 733, 740 (5th Cir. 2000) (quotation and citation omitted).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than . . . [the Supreme Court] has on a set of materially indistinguishable facts.

Id. at 740-41 (quotation and citation omitted). Under the "unreasonable application" clause of § 2254(d)(1), a federal court may grant the writ "if the state court identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 741 (quotation and citation omitted). The provisions of § 2254(d)(2), which allow the granting of federal habeas relief when the state court made an "unreasonable determination of the facts," are limited by the terms of the next section of the statute, § 2254(e). That section states that a federal court must presume state court fact determinations to be correct, though a petitioner can rebut that presumption by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1). But absent such a showing, the federal court must give deference to the state court's fact findings. Id.

**B.     Ineffective Assistance of Trial Counsel**

In his first ground for relief, Petitioner argues he was denied effective assistance of counsel. Specifically, Petitioner contends counsel was ineffective because his attorney (1) failed to unearth data from the manufacturer of the 2009 Dodge Charger which would have assisted in building a defense, (2) failed to advance a scientific defense using manufacturer and collision data what was available, and (3) failed to allow Chris Holt and Justin Drake to testify. Included in his final claim of ineffective assistance of counsel is Petitioner's statement that he was not allowed to testify on his own behalf.

Ineffective assistance of counsel claims are analyzed under the well-settled standard set forth in Strickland v. Washington, 466 U.S. 668 (1984):

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant can make both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Id. at 687. In deciding whether counsel's performance was deficient, the Court applies a standard of objective reasonableness, keeping in mind that judicial scrutiny of counsel's performance must be highly deferential. Id. at 686-689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional

assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. (Citation omitted). Ultimately, the focus of inquiry must be on the fundamental fairness of the proceedings whose result is being challenged. Id. at 695-97. Accordingly, in order to prevail on a claim of ineffective assistance of counsel, a convicted defendant must show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 687.

Petitioner first alleges trial counsel was ineffective because he failed to investigate data from the manufacturer of the 2009 Dodge Charger, the vehicle he used to ram Deputy Marshal McGill's vehicle. Specifically, Petitioner argues trial counsel should have discovered that a 2009 Charger's airbags deploy when the vehicle is involved in a collision at a speed of 14 or more miles per hour, and since the airbags in the Charger did not deploy, the Charger was not going very fast at the time of the collision. Petitioner relies on statements he found on the Internet. Petitioner similarly alleges counsel was ineffective because he failed to advance a scientific defense based on additional data he found on the Internet.

An attorney's failure to investigate the case against the defendant and to interview witnesses can support a finding of ineffective assistance. Bryant v. Scott, 28 F.3d 1411, 1435 (5th Cir. 1994). However, in order to establish that counsel was rendered ineffective by virtue of a failure to investigate the case against a defendant or to discover and present evidence, a convicted defendant must do more than merely allege a failure to investigate; he must state with specificity what the investigation would have revealed, what evidence would have resulted from that investigation, and how such would have altered the outcome of the case. See Anderson v. Collins, 18 F.3d 1208, 1221

(5th Cir. 1994); Nelson v. Hargett, 989 F.2d 847, 850 (5th Cir. 1993); United States v. Green, 882 F.2d 999, 1003 (5th Cir. 1989); Lockhart v. McCotter, 782 F.2d 1275, 1282-83 (5th Cir. 1986), cert. denied, 479 U.S. 1030 (1987).

Petitioner has failed to show his trial counsel was deficient or the alleged deficiency prejudiced the outcome of his case. Morse's claim incorrectly implies he could not be convicted of aggravated assault on a public servant because he was not driving very fast when he rammed Deputy Marshal McGill's vehicle. As explained by Respondent, Morse's speed is irrelevant as to whether he caused bodily injury to the officers involved when he rammed the Chevy Avalanche. In addition, all of the witnesses, including residents of the apartment complex where Petitioner was arrested, testified at trial that Petitioner accelerated into the Chevy Avalanche. Testimony also revealed the Avalanche was totaled by the collision, and its occupants suffered back and neck pain as a consequence of the collision. Moreover, the purported evidence Petitioner contends should have been introduced is contrary to counsel's trial strategy. Petitioner's attorneys attempted to show Petitioner was not trying to crash into the Avalanche but rather was attempting to "shoot the gap" between the Avalanche and another vehicle in order to exit the apartment complex's parking lot. Trial counsel implied the crash was caused by the Deputy Marshal backing up to close the gap. As such, trial counsel did not act deficiently by failing to introduce Petitioner's data found on the Internet, and Petitioner was not prejudiced thereby.

Petitioner next complains his attorney failed to call Chris Holt and Justin Drake as witnesses to discredit Ranger Coleman's testimony. Petitioner asserts Holt and Drake could have testified that Petitioner got into the passenger side of the Charger at the HEB in San Antonio instead of the

driver's side as testified to by Ranger Coleman. In addition, he claims they could have testified that Petitioner had permission to use the Charger and Petitioner was not aware the Charger was stolen.

The Fifth Circuit has repeatedly held that complaints of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative. Day v. Quarterman, 566 F.3d 527 (5th Cir. 2009). Thus, to prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense. Id. (citing Alexander v. McCotter, 775 F.2d 595, 602 (5th Cir. 1985)).

Petitioner has not shown deficient performance or prejudice. Petitioner has not provided the Court with an affidavit of Drake. Although he did provide the Court with the affidavit of Holt, Petitioner's nephew, Holt states nothing about Petitioner having permission to use the Charger or whether Petitioner was unaware the Charger was stolen. Moreover, Petitioner was heard by multiple officers after his take down in Austin admitting he had stolen the Charger. Also, it is immaterial whether Petitioner got in to the driver's side or the passenger side of the Charger in the HEB parking lot in San Antonio at approximately 2:00 a.m. on February 12, 2009, many hours before Petitioner's arrest.

Petitioner also asserts he expressed his desire to testify on his behalf but was denied that opportunity without explanation. Petitioner's assertion is directly in conflict with the record, which indicates his attorneys discussed with Petitioner the possibility of his testifying and Petitioner, along

with his attorneys, decided it would be best for Petitioner not to testify. 6 RR 3. The trial court verified with Petitioner that he agreed with the decision. 6 RR 4.

Having independently reviewed the entire state court record, this Court finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence. Accordingly, the Court is of the opinion that 28 U.S.C. § 2254, as amended by the AEDPA, bars habeas corpus relief on Petitioner's claim that he received ineffective assistance of trial counsel.

**C.    Brady Claim**

Petitioner next argues the prosecution erred by failing to disclose Brady material in the form of vehicle speed data.

In Brady v. Maryland, 373 U.S. 83 (1963), the Court held the suppression by the prosecution of evidence favorable to an accused after a request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution. To establish a Brady violation, Petitioner must prove (1) the prosecutor suppressed or withheld evidence (2) which was favorable and (3) material to the defense. Id. at 87; Allridge v. Scott, 41 F.3d 213, 217 (5th Cir. 1994), cert. denied, 514 U.S. 1108 (1995). The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. United States v. Bagley, 473 U.S. 667, 682 (1985). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. Id. Brady encompasses evidence that may be used to impeach a witness's credibility. Id. at 676. There is no Brady violation if the defendant, using due diligence, could have obtained the

information. Williams v. Scott, 35 F.3d 159, 163 (5th Cir. 1994), cert, denied, 513 U.S. 1137 (1995) (citing United States v. Ramirez, 810 F.2d 1338, 1343 (5th Cir.), cert. denied, 484 U.S. 844 (1987)).

As explained by Respondent, Petitioner has not met any of the Brady elements. Nothing in the record indicates the prosecution withheld vehicle speed data. In addition, Morse's exact speed is neither material nor favorable to his defense. As explained above, Morse's speed is irrelevant as to whether he caused bodily injury to the officers involved when he rammed the Chevy Avalanche. Finally, Petitioner has not established he could not have obtained vehicle speed data using his own due diligence.

Having independently reviewed the entire state court record, this Court finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence. Accordingly, Petitioner's claim does not warrant federal habeas relief.

**D.    Ineffective Assistance of Appellate Counsel**

In his final ground for relief, Petitioner argues his appellate counsel was ineffective because he failed to show prejudice in his claim of trial court error. As noted above, on appeal Petitioner contended the trial court abused its discretion by admitting evidence regarding the incident in Live Oak County the day before the offenses for which he was convicted.

A criminal defendant has a constitutional right to the effective assistance of counsel at trial and on a first appeal as of right. U.S. Const. amend. VI, XIV; Evitts v. Lucey, 469 U.S. 387, 393-95, (1985); Strickland, 466 U.S. at 688; Anders v. California, 386 U.S. 738, 744 (1967). An ineffective assistance claim is governed by the familiar standard set forth in Strickland, 466 U.S. at 668. See also Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001) (applying the Strickland standard to

ineffective assistance claims against appellate counsel).  As explained earlier, to establish ineffective assistance of counsel Petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different.  <u>Strickland</u>, 466 U.S. at 688.  To show prejudice, a petitioner must show that, but for appellate counsel's performance, there is a reasonable probability he would have prevailed on appeal.  <u>Smith v. Robbins</u>, 528 U.S. 259, 285 (2000).

The mere fact an attorney's argument did not succeed does not make an attorney constitutionally ineffective.  Moreover, the admission of the evidence regarding the Live Oak County incident was harmless.  As noted by the appellate court, the evidence supporting Petitioner's convictions was overwhelming and uncontroverted.

Having independently reviewed the entire state court record, this Court finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence.  Accordingly, the Court is of the opinion that 28 U.S.C. § 2254, as amended by the AEDPA, bars habeas corpus relief on Petitioner's claim that he received ineffective assistance of appellate counsel.

## **RECOMMENDATION**

It is recommended that Petitioner's application for writ of habeas corpus be denied.

## **CERTIFICATE OF APPEALABILITY**

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(A). Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, effective

December 1, 2009, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in Slack v. McDaniel, 529 U.S. 473, 484 (2000). In cases where a district court rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id.

In this case, reasonable jurists could not debate the dismissal or denial of the Petitioner's section 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. Miller-El v. Cockrell, 537 U.S. 322, 327 (2003) (citing Slack, 529 U.S. at 484). Accordingly, it is respectfully recommended that the Court shall not issue a certificate of appealability.

## OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are

being made. The District Court need not consider frivolous, conclusive, or general objections. Battles v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140, 150-153 (1985); Douglass v. United Servs. Auto. Assoc., 79 F.3d 1415 (5th Cir. 1996)(en banc).

To the extent that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 2nd day of September, 2014.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE